UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TRUSTEES OF THE U.A. LOCAL 393 PENSION FUND AND THE U.A. LOCAL 393 HEALTH AND WELFARE TRUST FUND,<br><br>   Plaintiffs,<br><br>   v.<br><br>ACS CONTROLS CORPORATION,<br><br>   Defendant. | Case No.: C 12-02533 PSG<br><br>**ORDER TO REASSIGN TO A U.S. DISTRICT JUDGE; REPORT AND RECOMMENDATION REGARDING PLAINTIFFS TRUSTEES OF THE U.A. LOCAL 393 HEALTH AND WELFARE TRUST FUND'S MOTION FOR DEFAULT JUDGMENT**<br><br>**(Re: Docket No. 11)** |

Plaintiffs Trustees of the U.A. Local 393 Pension Fund and the U.A. Local 393 Health and Welfare Trust Fund (the "Local 393 Trustees") move for entry of a default judgment against Defendant ACS Controls Corporation ("ACS"). The Local 393 Trustees also move for attorneys' fees. Having reviewed the papers and considered the arguments of counsel, the undersigned recommends that the Local 393 Trustees' motion for entry of default judgment and attorneys' fees be GRANTED.

Case No.: C 11-02533 PSG            1
ORDER TO REASSIGN; REPORT & RECOMMENDATION

# I. BACKGROUND

## A. Procedural History

On May 16, 2012, the Local 393 Trustees filed a complaint against ACS alleging a claim for breach of a collective bargaining agreement, the National Service and Maintenance Agreement (the "Agreement"), in violation of the Employee Retirement Income Security Act of 1974 ("ERISA").[1] On May 24, 2012, ACS was served with a summons and complaint.[2] ACS never answered or otherwise responded to the complaint. On July 17, 2012, the Local 393 Trustees moved for entry of default against ACS.[3] On July 18, 2012, the Clerk of the Court entered default against ACS.[4] On August 14, 2012, the Local 393 Trustees moved for default judgment against ACS and provided proof of service for both the notice and motion for entry of default judgment.[5] Copies of the motion for entry of default judgment by the court was sent to ACS by U.S. Mail.[6]

## B. Factual History

ACS is an employer under 29 U.S.C. § 1002(5). Under the Agreement, ACS is obligated to make payments to employee benefit funds, including the Health and Welfare Trust Fund Trust and Pension Trust Fund Trust (the "Trust Fund"). ACS's payments are based on the number of hours worked by employees that are covered by the Agreement. Payments are due no later than the 15th day of the following month and become delinquent after that date.

The Agreement also provides for liquidated damages of 20 percent of the total amount due if payment is not made by the 15th day of the following month. In addition, the Agreement provides for payment of the reasonable attorneys' fees and costs incurred in collecting delinquent contributions.

---

[1] *See* Docket No. 1.

[2] *See* Docket No. 4.

[3] *See* Docket No. 6.

[4] *See* Docket No. 7.

[5] *See* Docket No. 14.

[6] *See id.*

ACS made late payments beginning in December 2011 and failed to make any payments altogether for the months March 2012 to June 2012. The total amount of principal contributions owed is $10,458.63, liquidated damages total $4,961.70, attorneys' fees total $3,117.50, and costs total $425. The Local 393 Trustees seek judgment against ACS for a total amount of $18,962.83.

## II. LEGAL STANDARDS

Under ERISA, a trustee is authorized to bring a civil enforcement action to recover unpaid contributions from an employer who is bound to make such contributions under a collective bargaining agreement.[7]

After entry of default, district courts are authorized to grant default judgment, so long as the judgment does not "differ in kind from, or exceed in amount, what is demanded in the pleadings."[8] Entry of default judgment is within the court's discretion,[9] and is governed by the following factors: (1) the merits of plaintiff's substantive claim; (2) the sufficiency of the complaint; (3) prejudice to plaintiff; (4) the sum of money at stake; (5) potential disputes concerning material facts; (6) whether default was due to excusable neglect; and (7) the Federal Rules of Civil Procedure's strong policy favoring decisions on the merits.[10] In considering the *Eitel* factors, all factual allegations in the complaint are taken as true, except for those relating to damages.[11]

Where a default judgment is deemed appropriate, the factual allegations of the complaint, except those relating to damages, are taken as true.[12] So long as the allegations in the complaint are well pleaded, liability is established as to those allegations by the default.[13]

---

[7] *See* U.S.C. § 1132 (a)(3), § 1145 and § 1002(4).

[8] Fed. R. Civ. P. 54(c); *see also* Fed. R. Civ. P. 55.

[9] *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980).

[10] *Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986).

[11] *TeleVideo Sys., Inc. v. Heidenthal,* 826 F.2d 915, 917-918 (9th Cir. 1987).

[12] *See Geddes v. United Fin. Group,* 559 F.2d 557, 560 (9th Cir. 1977) (internal citations omitted).

[13] *See Trans World Airlines, Inc. v. Hughes,* 308 F.Supp. 679, 683 (D.C.N.Y. 1969), *modified on other grounds,* 449 F.2d 51, *rev'd on other grounds,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 (1973).

ORDER TO REASSIGN; REPORT & RECOMMENDATION

As to damages, when the damages claimed are not readily ascertainable from the pleadings and the record, the court may (but is not required to) conduct a hearing to determine the amount of damages.[14]

### III. DISCUSSION

Virtually all of the *Eitel* factors weigh in favor of granting the Local 393 Trustees' motion for default judgment. The first three factors, which relate to the merits, and sufficiency of and prejudice addressed by the Local 393 Trustees' claims, undoubtedly favor the Local 393 Trustees.

As for the fourth factor, the Local 393 Trustees seek money damages totaling $18,962.83, principal totaling $10,458.63 and liquidated damages totaling $4,961.70. Local 393 Trustees further seeks attorneys' fees totaling $3,117.50 and costs totaling $425.00.

Under ERISA, statutory damages are provided where a multi-employer plan successfully sues under 29 U.S.C. § 1145. A plan that obtains judgment in its favor in an action for unpaid contributions under Section 1145 is entitled to:

> (A) the unpaid contributions;
> (B) the interest on unpaid contributions;
> (C) an amount equal to the greater of –
>   (1) interest on the unpaid contributions, or
>   (2) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under sub-paragraph (A).
> (D) reasonable attorneys' fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.[15]

The declaration submitted by Elizabeth Jesinger supports the claim that there are unpaid contributions by ACS for the months of March 2012 to June 2012. The money damages totaling $10,458.63 therefore are reasonable. Also, the request for liquidated damages in the amount of $4,961.70 is supported by the Agreement and the court finds that the amount of liquidated damages has been calculated correctly. The liquidated damages sought therefore are appropriate. Having prevailed in the action for unpaid and delinquent contributions, the Local 393 Trustees are entitled to reasonable attorneys' fees and costs. In this district, the starting point for determining reasonable

---

[14] *See* Fed. R. Civ. P. 55(b)(2).

[15] 29 U.S.C. §1132(g)(2).

Case No.: C 11-02533 PSG   4
ORDER TO REASSIGN; REPORT & RECOMMENDATION

fees is the calculation of the "lodestar," which is obtained by multiplying the number of hours reasonably expended on litigation by a reasonable hourly rate.[16] In calculating the lodestar, the court must determine a reasonable rate and a reasonable number of hours for each attorney.[17] Here, the Local 393 Trustees seek $3,117.50 in attorneys' fees for 14.50 hours of work at a rate of $215 per hour. The court finds both the rate and the time spent to be reasonable and recommends that the attorneys' fees be awarded in full. The Local 393 Trustees also seek costs totaling $425.00. The costs were incurred for the filing fee and for courier expenses. The court finds that the costs sought are reasonable and recommends that these costs be awarded in full.

As for the fifth factor, there are likely no disputes as to material facts because ACS did not answer or otherwise respond to the complaint. As for the sixth factor, it is apparent that ACS's default was not due to excusable neglect. ACS was served with the summons, complaint and the application for default judgment. It is thus unlikely that excusable neglect is the reason for ACS's failure to appear before the court. Finally, while the Federal Rules' strong policy favors decisions on the merits, ACS has been aware of the pending action since May 24, 2012. ACS did not answer or otherwise respond to the complaint. It is unlikely therefore that a decision on the merits is reasonably possible.[18] Notwithstanding courts' general reluctance to enter default judgment, the court recommends that it is appropriate here.

### IV.  CONCLUSION

For all of the reasons provided above, the court recommends that Local 393 Trustees' motion for entry of default judgment be granted against ACS as follows: (1) principal amount totaling $10,458.63; (2) liquidated damages totaling $4,961.70; and (3) attorneys' fees totaling $3,542.50 and costs totaling $425.00.

---

[16] *See Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir. 1987).

[17] *See Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986), *reh'g denied, amended on other grounds,* 808 F.2d 1373 (9th Cir. 1987).

[18] *See Eitel,* 782 F.2d at 1472.

1 **IT IS SO RECOMMENDED**.

2 Dated:   10/19/2012

3 _____
PAUL S. GREWAL
United States Magistrate Judge